[No. D005012. Fourth Dist., Div. One. Feb. 3, 1988.]

ALLSTATE INSURANCE COMPANY, Plaintiff and Respondent, v. HEIDI CONDON et al., Defendants and Appellants.

## COUNSEL

Brian D. Monaghan, John H. Metz and Elizabeth E. Kline for Defendants and Appellants.

Higgs, Fletcher & Mack, Horvitz, Levy & Amerian, Richard Amerian and David S. Ettinger for Plaintiff and Respondent.

## OPINION

TODD, J.—Heidi and George Condon appeal from a summary judgment in favor of Allstate Insurance Company.[1] Allstate filed an action seeking a declaration of the rights of the respective parties concerning an auto insurance policy insuring Joyce Childs Willoughby. Willoughby's son, Brian Keith Susberry, while driving a Toyota, struck Heidi Condon as she walked through an intersection. The Condons allege multiple errors were made when the trial court granted Allstate's summary judgment motion, denying coverage under the policy. First, because "owner" or "non-owned" are not more precisely defined, "non-owned" is ambiguous and must be interpreted so as to afford the Condons coverage. Second, the court could not properly deny recovery based upon the special nonowned auto exclusion clause because: 1. it is ambiguous; 2. a more descriptive word could have been used to characterize the scope of exclusion; and, 3. the excluding language is not placed in a section marked "EXCLUSIONS." For the reasons set forth below, we affirm the order of the trial court.

### FACTS

Joyce Willoughby owned an Allstate automobile insurance policy for the period June 27, 1981, through December 27, 1981. This policy named one covered auto—a 1976 Cadillac. While title was in Willoughby's name, a second auto, a Toyota, was driven, maintained and repaired exclusively by her son, Brian Susberry. The Toyota was not listed as an insured vehicle in the policy.

On September 2, 1981, Susberry, while driving the Toyota, struck and severely injured Heidi Condon as she walked through a downtown intersection. The Condons filed suit against Susberry and his mother; Allstate refused to defend either party. The Condons made a settlement demand upon Allstate, alleging Susberry was insured under his mother's policy as a relative driving a nonowned automobile. This demand was refused by Allstate. On October 13, 1983, as part of a court-ordered settlement

---

[1] Since there was no disposition of the Condon cross-complaint in the trial court, this court hereby amends the judgment below to include an order entering judgment for the cross-defendants (Allstate) in that matter. (*Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90, 110 [199 Cal.Rptr. 383, 46 A.L.R.4th 521]; *Roy Brothers Drilling Co.* v. *Jones* (1981) 123 Cal.App.3d 175, 180-181 [176 Cal.Rptr. 449].)

conference, Susberry stipulated to a judgment of $160,000 against him and assigned all his right and interest in the Allstate policy to the Condons. On October 14, 1983, Allstate filed a complaint for declaratory relief asking the court to conclude the Allstate policy provided no coverage for Susberry or his mother. On May 2, 1986, Allstate brought a summary judgment motion concerning its complaint for declaratory relief. The trial court, after a hearing, granted the motion concluding the Allstate policy "provide[d] no coverage regarding any possible liability arising out of the automobile accident of September 2, 1981, . . . ." This appeal ensued.

DISCUSSION

I

The Allstate insurance policy contains this coverage provision:

"Insured Autos

". . . . . . . . . . . . . . . . . . .

"(4) A non-owned auto used with the permission of the owner. This auto must not be available or furnished for the regular use of a person insured." The Allstate policy does not further define "owner" or "non-owned." Allstate argues either Susberry or his mother was the owner,[2] despite the fact his mother was the registered owner. The Condons argue "owner" and "non-owned" are ambiguous terms requiring the court to interpret "non-owned" so as to favor coverage under the policy. We agree with the Condons.

In *Government Employees Ins. Co.* v. *Kinyon* (1981) 119 Cal.App.3d 213, 222 [173 Cal.Rptr. 805], the court found the term "owner," without more precise definition, ambiguous. In so holding, the court reasoned: "[T]he word 'owner' is a nomen generalissimum. Its meaning is to be gathered from the context in which it is used and the subject matter to which it is applied. . . . 'Owner' is to be interpreted in a manner in which it would be understood by the *average* man, . . . even though a different or technical meaning may have been intended by the insurer; and . . . should be construed to maximize coverage in a fashion consonant with the fairness to the insurer." (*Ibid.*) The instant case provides a classic example of the differing relationships between a person and a "thing" which may be characterized as ownership. The mother, as the Condons suggest, is the registered owner of the Toyota; however, for all intents and purposes, Susberry exerted the

---

[2] Susberry exerted exclusive control over the car's use and care.

type of control over the Toyota an average person would consider consonant with ownership. In fact, Susberry himself apparently admitted in his deposition that he considered himself the owner of the vehicle.[3] The multiple interpretations advanced by Allstate on the question of ownership highlight the ambiguity of the term "non-owned." Thus, construing coverage in a light most favorable to the Condons, we conclude the auto is nonowned as to Susberry. (*Ibid.*)

## II

■ The above conclusion requires us to consider a second term contained in the paragraph previously interpreted. The policy excludes nonowned coverage if the nonowned auto is "available or furnished for the regular use of a person insured." The Condons argue the term "a person insured" is ambiguous, thus the court erred when it enforced this exclusionary provision so as to deny coverage under the policy. We disagree.

■ A long history of California cases and Insurance Code[4] section 11580.1, subdivision (b)(3),[5] provide that an exclusionary clause in an auto insurance policy cannot be enforced unless the clause is phrased in clear and unmistakable language. (*California State Auto Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190, 194 [130 Cal.Rptr. 520, 550 P.2d 1056].) However, if the exclusion is not ambiguous, it is to be enforced. (*Id.* at p. 195.) ■ The Condons contend Susberry, as a nonowner, is provided coverage while driving his mother's (the owner) Toyota, since that auto was not "furnished for the regular use of a person insured" here, the mother. They argue "a person insured" need not be construed to include Susberry (clearly an additional insured under the policy),[6] but rather suggest only Willoughby is that person under these circumstances. If "a person insured"

---

[3] Acknowledging the Condons' objection to the admittance of these statements, we use this testimony only to illustrate the ambiguity of the term "non-owner" in the policy.

[4] All statutory references are to the Insurance Code unless otherwise specified.

[5] Section 11580.1, subdivision (b)(3) reads as follows:

"(b) Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions:

" . . . . . . . . . . . . . . . .

"(3) Designation by explicit description of the purposes for which coverage for such motor vehicles is specifically excluded."

[6] The policy defines persons insured as follows, in part: "Persons Insured

"(1) While using your insured auto

 (a) You

 (b) *Any resident,* and

 (c) *Any other person using it with your permission*

"(2) While using a non-owned auto

 (a) You

 (b) *Any resident relative of your household using a four wheel private passenger,* station wagon or utility auto." (Italics added.)

means only one insured, or only the named insured, this theory could be so applied. We must, therefore, determine whether the term "a person insured" is susceptible of the construction contended by the Condons.

In *California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick, supra,* 17 Cal.3d 190, 195, the Supreme Court determined "any insured" unambiguously referred to all persons, named or unnamed, receiving coverage under the policy. In so holding, the court distinguished *State Farm Mut. Auto Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193 [110 Cal.Rptr. 1, 514 P.2d 953], a case interpreting the meaning of "the insured": "In our view, *Jacober* is distinguishable because its exclusion clause refers to injuries to '*the* insured,' while the present policy refers to injuries sustained by '*any* insured.' The term 'any insured' has a plural connotation, unlike 'the insured.' . . .

"In view of the popular and accepted meaning of the word 'any,' the term 'any insured' unmistakably refers to any person insured under the policy, whether such person is a named or unnamed insured, . . ." (*California State Auto Assn. Inter-Ins. Bureau* v. *Warwick, supra,* 17 Cal.3d 190, 195, fns. omitted, original italics.)

"A person insured" in the Allstate policy has a plural connotation similar to "any insured." "A person insured" logically refers to any one of all the persons insured under the policy. There is no logical method to construe the phrase as singling out any particular insured person within the coverage of the policy.

Section 11580.1, subdivision (c)(8), provides another analogous definition. The section reads, in pertinent part: "The term '*the* insured' as used in paragraphs (1), (2), (3), and (4) shall mean *only that* insured under the policy against whom the particular claim is made or suit brought. The term '*an* insured' as used in paragraphs (5) and (6) shall mean *any* insured under the policy . . . ." (Italics added.) Thus, "an insured" is defined as referring to all insureds under the policy, contrasted to one insured person when identified as "the insured."

It is true the Allstate policy herein refers to "*a* person insured" (italics added). "A" and "an" are analogous modifiers; one or the other is used dependent upon whether the word it modifies begins with a consonant or a vowel sound. Words beginning with consonant sounds are properly modified by "a." "An" is used to precede words beginning with vowel sounds. If Allstate had used the term "an person insured," the policy provision would have been grammatically incorrect. Because proper grammar necessitated this deviation from the precise statutory language, for purposes of section 11580.1, subdivision (c), "a person insured" is the functional analog

of "an insured person." The Insurance Code thus defines "a person insured" as "any person insured under the policy."

Therefore, the construction advanced by the Condons is untenable. Susberry, because he is an insured person using a nonowned car on a regular basis with permission, is excluded from protection under the policy. Likewise, the Condons, as Susberry's assignees, cannot recover.

Were we to conclude "a person insured" is ambiguous and therefore refuse to enforce the exclusion, an untenable situation would unfold. Susberry is the exclusive operator of the Toyota, while his mother is the registered owner. Neither maintained any insurance for the Toyota; his mother did, of course, have a policy for the Cadillac vehicle she drove. Without the exclusion, Susberry would be allowed exclusive use of a vehicle registered in his mother's name and receive insurance protection for his use of that vehicle—without anyone ever paying a single penny in premiums on the Toyota. We realize there is a compelling public policy to provide "'. . . "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways . . . suffer grave injury through the negligent use of those highways by others."'" (*Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 53 [109 Cal.Rptr. 698, 513 P.2d 922].) However, this public policy cannot be effectuated so as to require insurance companies to provide coverage at no cost. Requiring Allstate to cover the Condons for no charge where a statutorily approved and defined exclusion exists is an unlawful fiscal burden and cannot be placed on Allstate.

### III

The Condons next allege, because "*any* person insured" would have been a more precise term to describe an exclusion designed to cover all persons under the policy, we are required to construe the exclusionary clause in favor of the Condons. This contention is without merit. ■ A contractual provision (even in an insurance policy) need not be perfectly drafted; it must be "conspicuous, plain and clear." (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].) As this court held in *Becker* v. *State Farm Mut. Auto Ins. Co.* (1975) 52 Cal.App.3d 282, 286 [124 Cal.Rptr. 739], "[w]hile the language of the policy . . . could be more explicit, we do not find it ambiguous."

### IV

■ Finally, the Condons allege, because the exclusion language was not in the section of the policy delineating exclusions to coverage, we must

interpret the exclusionary language so as to afford the Condons coverage. We disagree.

Where a policy provision is ambiguous, particularly where it purports to limit the insured's coverage but is not included in the section marked exclusions, "'doubts as to meaning must be resolved against the insurer,' . . ." (*State Farm Mut. Auto Ins. Co.* v. *Eastman* (1984) 158 Cal.App.3d 562, 568 [204 Cal.Rptr. 827].) *Eastman* stands for the proposition that existing ambiguity in an exclusion clause is exacerbated where that exclusionary language is placed under a policy heading other than "EXCLUSIONS." The court in no way intimates an otherwise unambiguous exclusion clause is rendered ambiguous due to its mere placement under a heading other than "EXCLUSIONS." We refuse to manufacture ambiguity where it does not exist. Susberry and the Condons were properly appraised of the exclusion involving regular use of a nonowned auto, although it was included in the section describing coverage.

### DISPOSITION

The order is affirmed.

Wiener, Acting P. J., and Work, J., concurred.