**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, an Illinois Corporation, | No.    23-55706 |
| Plaintiff-counter-defendant-Appellee, | D.C. No. 8:20-cv-00682-JVS-KES |
| v. | MEMORANDUM* |
| FOOTPRINTS BEHAVIORAL INTERVENTIONS, INC., a California corporation, | |
| Defendant-counter-claimant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted June 14, 2024
Pasadena, California

Before:  W. FLETCHER, CHRISTEN, and VANDYKE, Circuit Judges.
Dissent by Judge VANDYKE.

Appellant Footprints Behavioral Interventions, Inc., appeals from a district

court order granting Appellee Evanston Insurance Company's motion for summary

---

*     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

judgment. We assume the parties' familiarity with the facts and recite them only as necessary. We review de novo the district court's order granting summary judgment. *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. The district court properly granted summary judgment on Evanston's breach of contract claim because Footprints made a material misrepresentation in its renewal application. In June 2019, Footprints answered "no" to Question 7(e) on its insurance renewal application: "Are you aware of any circumstances which may result in a malpractice claim or suit being made or brought against you or any of your employees?" It is undisputed that, at the time Footprints filled out this renewal application, Footprints' former employee Abigail Kim had been criminally convicted of charges arising from her sexual abuse of a Footprints client, a minor with autism. It is also undisputed that Footprints knew about Kim's conviction. Question 7(e) did not ask whether Footprints would be liable—the question was whether a suit was likely. Footprints' arguments regarding the merits of such a claim are inapposite. Based on the undisputed facts, no reasonable jury could conclude that Footprints was unaware of circumstances that might result in a malpractice claim being brought against it.

To the extent that Footprints argues that the term "malpractice" narrows the scope of Question 7(e), we are unpersuaded. First, this argument was not raised in

2

Footprints' briefing below. Separately, a former employee's criminal conviction for sexually abusing a minor client could indicate negligent hiring or failure to supervise, for which her employer might be susceptible to a malpractice claim under Oregon law. *See Vaughn v. First Transit, Inc.*, 206 P.3d 181, 187 n.7 (Or. 2009) (recognizing that a principal may be directly liable for negligence "in hiring, instructing, or supervising the agent"); *Eads v. Borman*, 277 P.3d 503, 510 n.6 (Or. 2012) (citing *Vaughn* to acknowledge direct liability "for physical torts committed by an agent" in malpractice claims against medical providers).

2. The district court properly granted summary judgment to Evanston on the basis that prior knowledge clauses in the claims-made policy precluded coverage.[1] Footprints contends that because it knew of no facts that could establish its liability, a reasonable insured in its position would not have anticipated suit. Footprints again equates liability with likeliness of a claim. California's strong construction preference requires that "[a]ny ambiguities in the policy are construed in favor of the insured." *Nat'l Union Fire Ins. Co. v. Lynette C.*, 279 Cal.

---

[1] The Prior Knowledge Clause provides that Evanston would not cover damages where Footprints knew, prior to the effective policy date, "of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured's position to conclude that a Claim was likely." Similarly, the Sexual Acts Liability Endorsement makes coverage contingent on the Insured having "no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may lead a reasonable person in the Insured's position to conclude that a Claim was likely." We refer to these clauses together as the prior knowledge clauses.

Rptr. 394, 396 (Ct. App. 1991). As such, an insured's predictive liability analysis may avoid summary judgment in different circumstances. But under the egregious facts of this case, any reasonable employer could expect to be sued—regardless of whether that claim would succeed. The district court properly concluded that no reasonable jury could find that Footprints had no prior knowledge of a likely claim.

3. We reject Footprints' contention that Evanston nevertheless owed a duty to defend. The insurer has a duty to defend if the policy is ambiguous and the insured would reasonably expect coverage. *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 174–75 (Cal. 1966). The Representations Clause[2] unambiguously serves as a condition precedent to coverage. If a condition precedent is not satisfied, there is no basis for coverage and no duty to defend. *See Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 468 (Cal. 2005).

Pursuant to the Representations Clause, Footprints agreed that Evanston's assumption of risk or hazard relied "upon the truth of [Footprints']

---

[2] The Representations Clause provides:
> By acceptance of this policy, the Insureds agree as follows:
> 1. That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and
> 2. That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

4

representations." Because we have concluded that Footprints' renewal application misrepresented the risk of such claims, Evanston established that it did not have a duty to indemnify or defend.

4. Footprints is incorrect that Evanston's failure to claim damages in its initial disclosure bars its breach of contract claim. Footprints relies on Federal Rule of Civil Procedure 37(c)(1), which bars a party from using evidence in a motion if they failed to produce it under Rule 26(a) or (e), "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, however, after its initial disclosures but before its motion for summary judgment, Evanston provided several discovery responses indicating that it had incurred damages. Footprints thus had notice of Evanston's damages and the initial failure to disclose was rendered harmless. *See* Fed. R. Civ. P. 26(e)(1)(A) (requiring supplemental disclosure only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").

**AFFIRMED.**

*Evanston Insurance Co. v. Footprints Behavioral Interventions, Inc.*, No. 23-55706
VANDYKE, Circuit Judge, dissenting:

The key assumption driving both the majority and the district court in this case is that, given the egregious nature of Kim's conduct, Footprints obviously had to be aware that it could be sued. But that intuition should not resolve this case. Regarding Footprints's representation in Question 7(e) of its renewal application, factual disputes preclude the conclusion at summary judgment that Footprints misrepresented its knowledge as to the likelihood of a *malpractice* claim being brought. And even if the Prior Knowledge Clause disclaimed Evanston's duty to indemnify, California's broad view of the duty to defend and preference for construing insurance policies in favor of the insured suggests that Evanston still had the duty to defend Footprints. I therefore respectfully dissent.

The district court erred in concluding that there is no dispute of fact regarding whether Footprints's application contained a material misrepresentation. Question 7(e) in the application asks whether Footprints was aware of circumstances which might "result in a malpractice claim or suit" being brought against it. As Footprints repeatedly emphasizes in its briefing, this question only refers to claims or suits involving *malpractice*.

Evanston first argues that Footprints was aware of circumstances under which it could have been liable under a respondeat superior theory for Kim's intentional torts. It relies primarily on *Fearing v. Bucher*, a case in which a Catholic archdiocese

was held liable for a sexual assault perpetrated by a priest. 977 P.2d 1163 (Or. 1999). But whether Footprints could be held liable for any intentional torts committed by Kim is a different question than whether her conduct might give rise to Footprints's own liability for *malpractice*.

Evanston next argues that there was a possibility that a claim would be brought against Footprints for negligent hiring, training, and supervision. But Footprints has highlighted a number of facts it disputes that relate to its knowledge, including whether the Special Incident Report (SIR) reported wrongdoing against K.B. or against Kim, whether Footprints's report to the police alleged child abuse, whether Footprints's general counsel advised Evanston that Footprints knew it would be sued since 2017, and whether the Footprints employee who completed the Renewal Application knew anything about Kim's criminal trial. Since the district court resolved this issue at the summary judgment stage, the existence of—viewing the evidence in the light most favorable to the non-movant—a factual dispute regarding the falsity of Footprints's answer warrants reversal on this issue. *See Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021).

And even assuming that Footprints had knowledge of a situation that might lead a reasonable person to conclude that a Claim was likely—thereby triggering the Prior Knowledge Clause—Evanston's duty to defend was not disclaimed. California law views the insurer's duty to defend, "which applies even to claims that are

2

'groundless, false, or fraudulent,' [as] separate from and broader than the insurer's duty to indemnify." *Cunningham v. Universal Underwriters*, 120 Cal. Rptr. 2d 162, 167 (Ct. App. 2002); *see also Howard v. Am. Nat'l Fire Ins. Co.*, 115 Cal. Rptr. 3d 42, 61–62 (Ct. App. 2010). To evade coverage, "[a]n exclusionary clause must be *conspicuous, plain and clear*." *De May v. Interinsurance Exch.*, 38 Cal. Rptr. 2d 581, 583 (Ct. App. 1995) (quotation omitted).

The Prior Knowledge Clause does not clearly apply to the duty to defend. The policy discusses Evanston's duties to indemnify and defend in two separate sections. And the Prior Knowledge Clause, by its terms, only applies to Evanston's duty to pay the monetary portion of any judgment, award, or settlement as a result of a Claim. Given California law's general preference for construing policies in favor of the insured, *see Nat'l Union Fire Ins. Co. v. Lynette C.*, 279 Cal. Rptr. 394, 396 (Ct. App. 1991), the Prior Knowledge Clause should be construed as only disclaiming Evanston's duty to indemnify—not its duty to defend.

The majority concludes that the Representations Clause—through Footprints's answer to Question 7(e)—precludes Evanston's duty to defend. But as discussed above, there is a dispute of fact as to whether Footprints mispresented its knowledge in its answer to Question 7(e). The district court therefore erred in granting summary judgment as to that issue, and it would be improper to conclude that the duty to defend was disclaimed at this stage.

3

Given California's construction preferences and the factual disputes at issue here, the district court erred in granting summary judgment on both the basis of Footprints's representations in its application and the Prior Knowledge Clause. I therefore would reverse and remand to the district court for further proceedings.